[Sac. No. 2260. In Bank.—December 28, 1916.]

WARREN SMITHSON, by His Guardian ad Litem, T. A. SMITHSON, Respondent, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

FEDERAL EMPLOYERS' LIABILITY ACT—ACTIONS IN STATE COURTS—DECISIONS OF UNITED STATES COURTS CONTROLLING.—In actions brought in the state courts under the provisions of the Federal Employers' Liability Act, approved April 22, 1908, the decisions of the supreme court of the United States are controlling in the construction of the act.

ID.—STATE ACT PROHIBITING EMPLOYMENT OF MINORS DURING CERTAIN HOURS—STATUTE ENACTED FOR SAFETY OF EMPLOYEES—ERRONEOUS INSTRUCTION.—In an action brought in the state court under the provisions of the Federal Employers' Liability Act to recover damages for personal injuries sustained by a minor while in the employ of a common carrier engaged in interstate commerce, it is error to instruct the jury that the act of the legislature of the state of California providing that no minor under the age of eighteen years shall be employed or permitted to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning (Stats. 1911, p. 910), is a

statute enacted for the safety of employees, as those words are used in section 3 of the federal act.

ID.—STATE ACT NOT EFFECTIVE AS POLICE REGULATION.—Such act of the legislature, notwithstanding it is in no wise in conflict with the federal act, cannot be employed with and as a supplement to the federal act as a state police regulation, for the legislation of Congress upon the matter is exclusive.

ID.—INJURY TO EMPLOYEE—VIOLATION OF "ANY STATUTE" CONTRIBUTING TO INJURY—FREEDOM FROM CONTRIBUTORY NEGLIGENCE—CONSTRUCTION OF ACT—STATE STATUTES EXCLUDED.—The phrase "any statute," as that language is employed in section 3 of the Federal Employers' Liability Act, providing that in any action brought against any common carrier under it an employee "shall not be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee," means another federal statute, and does not include the statutes of a state.

ID.—INJURY TO ENGINE HELPER—LACK OF SIGNAL TO MOVE ON TURNTABLE—TRIAL ON ISSUE—INSUFFICIENCY OF DENIAL—APPEAL—OBJECTION NOT REVIEWABLE.—In an action against a railroad corporation to recover damages for personal injuries received by an employee, whose duty it was to assist in running engines into the roundhouse after they had finished their trips, where the answer did not deny the allegation that no signal was given by plaintiff for the engine which caused the injury to move upon the turntable, but the denial was taken by both parties upon the trial as an accepted fact, and issues joined without objection, neither party will be permitted for the first time on appeal to claim that such issue was not joined.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial. L. M. Fulkerth, Judge.

The facts are stated in the opinion of the court.

U. T. Clotfelter, L. J. Maddux, and A. H. Van Cott, for Appellant.

Cushing & Cushing, Hatton & Scott, and Erwin E. Richter, for Respondent.

HENSHAW, J.—This action was brought by Warren Smithson, a minor, by his guardian *ad litem,* to recover damages from defendant for injuries sustained by plaintiff while

in its employ. Plaintiff at the time of the action was seventeen years of age, well, active, and in possession of all his faculties. He was employed by defendant at its roundhouse at Riverbank, California, in the capacity of night-hostler helper; that is to say, his employment was in the night-time, and he was the assistant or helper of a hostler, whose duty it was to take engines which had finished their work, run them into the roundhouse, where they were looked over and put in condition for their next trips. Outside of the roundhouse was a turntable for the reception of engines which were there turned to face any desired direction. At an elevation over this turntable was a "cab" or station, where was a lever by which the motive power of the turntable was controlled. The rails leading from the roundhouse extended on to this turntable. It was a part of the duty of the helper to adjust the turntable so that these rails ran true with the rails upon which was to come the approaching engine. This truing up of the rails was known as "spotting" the turntable. When the turntable was thus "spotted" it became the helper's duty to signal the night hostler in the engine that all was in readiness for him to run his engine on the table. The usual signal was given by moving from right to left the lighted lantern which the helper carried. It is contended by appellant that another customary signal was given by the helper placing his lantern in a particular location upon the girder of the turntable and that the latter signal was given in this instance. It is charged by respondent that the hostler in control of the engine backed his engine on to the turntable without receiving any signal from plaintiff. Plaintiff's feet were caught and crushed by the approaching engine. The injuries necessitated partial amputation of both feet and crippled him for life. The jury awarded him damages in the sum of twenty-six thousand dollars. From the judgment which followed and from the order of the court refusing its motion to grant a new trial, defendant appeals.

The action is admittedly brought under the provisions of the Federal Employers' Liability Act. The principal question presented upon this appeal arises out of the provisions of section 3 of this act and the applicability to its provisions of a certain statute of this state. Section 3 of the Federal Employers' Liability Act provides that in any action brought against any common carrier under it an employee "shall not

be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.'' (Public No. 100, H. R. 20310. Act approved April 22, 1908.)

At the time of this accident there was upon the books of this state a statute declaring as follows: ''No minor under the age of eighteen years shall be employed or permitted to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning.'' (Stats. 1911, p. 910.) This respondent was injured at about midnight. The court instructed the jury as follows:

''You are further instructed that under a certain statute of California in effect during the month of September, 1912, it was provided that 'No minor under the age of eighteen years shall be employed or permitted to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning.' ''

''You are further instructed that said statute of the state of California is a 'statute enacted for the safety of employees' as said words are used in the Federal Employers' Liability Act, providing that no employee who may be injured under the circumstances there stated shall be held to have been guilty of contributory negligence where the violation of such statute contributed to his injuries.

''You are further instructed that under the laws of this state it was unlawful at the time of plaintiff's employment for defendant to employ or permit minors under the age of eighteen years to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning, and if you believe from the evidence that plaintiff at the time of his injuries was a minor under the age of eighteen years, and was at said time being employed or permitted by defendant to work between the hours of 10 o'clock in the evening and 5 o'clock in the morning, if you believe from the evidence that such employment or permission to work during said night hours contributed to his injuries, you will find plaintiff not guilty of contributory negligence.''

In justice to the trial judge it should be stated that at the time of the trial of this action there were but few decisions construing the scope and effect of the phrase ''any statute'' as that language is employed in the Federal Liability Act. The trial court took the view that the language of the supreme

court of the United States in *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834], defining "any statute" to mean any federal statute, was *obiter* and adopted the construction of the statute laid down in Doherty's Liability of Railroads to Interstate Employees, page 119, to the effect that "any statute" includes the statutes of a state. Support of this view was also found in the decision of the supreme court of the state of Washington in *Opsahl* v. *Northern Pacific R. R. Co.,* 78 Wash. 197, [138 Pac. 681]. But the later decisions of the supreme court of the United States, which are of course controlling upon the question, completely eliminate this matter from the domain of controversy. These decisions are numerous, are uniform, and adopt and reaffirm the declarations of the Seaboard Air Line case. There is need to cite and quote but from few of them.

In *De Atley* v. *Chesapeake etc. R. Co.,* 201 Fed. 591, it is declared that the Federal Employers' Liability Act "was intended to cover every act of negligence for which a common carrier engaged in interstate commerce might be liable to its employees in such commerce." And further, that this act "making common carriers engaged in interstate commerce liable for injuries to employees supersedes all other common law and statutory liabilities on the part of such carriers."

In *Michigan Cent. R. Co.* v. *Vreeland,* 227 U. S. 59, [Ann. Cas. 1914C, 176, 57 L. Ed. 417, 33 Sup. Ct. Rep. 192], it is declared that since the passage of the Federal Employers' Liability Act, "that act is paramount and exclusive," and "we may not piece out this act of Congress by resorting to the local statutes of the state of procedure or that of the injury."

In *St. Louis etc. R. Co.* v. *Hesterly,* 228 U. S. 702, [57 L. Ed. 1031, 33 Sup. Ct. Rep. 703], it is declared that "the Federal Employers' Liability Act supersedes state laws in the matters with which it deals, including liability of carriers while engaged in commerce between the states." This was the holding in answer to the declaration of the supreme court of the state of Arkansas that the state law was only supplementary to the Federal Employers' Liability Act.

In *Wabash Ry. Co.* v. *Hayes,* 234 U. S. 86, [58 L. Ed. 1226, 34 Sup. Ct. Rep. 729, 6 N. C. C. A. 224], it is said: "Had the injury occurred in interstate commerce as was alleged, the

federal act undoubtedly would have been controlling and a recovery could not have been had under the common or statute law; in other words, the federal act would have been exclusive in its operation, not merely cumulative. (*Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 53, 55, [38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169, 1 N. C. C. A. 875]; *St. Louis etc. R. Co.* v. *Seale*, 229 U. S. 156, 158, [Ann. Cas. 1914C, 156, 57 L. Ed. 1129, 33 Sup. Ct. Rep. 651]; *North Carolina R. Co.* v. *Zachary*, 232 U. S. 248, 256, [Ann. Cas. 1914C, 159, 58 L. Ed. 591, 34 Sup. Ct. Rep. 305, 9 N. C. C. A. 109]; *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492, [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834].)''

In *Toledo etc. R. Co.* v. *Slavin*, 236 U. S. 454, [59 L. Ed. 671, 35 Sup. Ct. Rep. 306], the Ohio statute abolished the rule of the common law as to the assumption of risks occasioned by defects in tracks, while the federal statute left that common-law rule in force. Over objection the law of the Ohio statute was delivered to the jury and was held to be error upon the authority of *Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492, [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834].

In *Chicago etc. R. Co.* v. *Wright*, 239 U. S. 548, [60 L. Ed. 431, 36 Sup. Ct. Rep. 185], the action was brought under the Federal Employers' Liability Act and instructions touching negligence were given in conformity with the law of the state of Nebraska. It was declared that as the Federal Liability Act ''is exclusive and supersedes state laws upon the subject, it was error to submit the case to the jury as if the state act were controlling.''

It is unnecessary to cite the corresponding decisions of the state courts, since uniformly, as in duty bound to do, they follow the decisions of the supreme court of the United States. It is sufficient here to say that the supreme court of the state of Washington thus felt compelled to, and did, reverse its decision in the Opsahl case in the later case of *Lauer* v. *Northern Pacific R. Co.*, 83 Wash. 465, [145 Pac. 606].

Respondent's second position is that, even if the statutes of a state be not included in the language of the Federal Employers' Liability Act, nevertheless, this particular statute is of such character that it may be employed with and as a supplement to the provisions of the federal act as being a state police

regulation, and as being in no wise in conflict with the provisions of the federal act. A reading of the decisions already cited will establish the untenableness of this position, but if more need be added, it is found in the conclusive language of the supreme court of the United States in the case of *Prigg* v. *Pennsylvania,* 16 Pet. (41 U. S.) 539, 617, [10 L. Ed. 1060, 1090] : "If Congress have a constitutional power to regulate a particular subject and they do actually regulate it in a given manner and in a certain form, it cannot be that the state legislatures have a right to interfere, and, as it were, by way of complement to the legislation of Congress, to prescribe additional regulations and what they may deem auxiliary provisions for the same purpose. In such a case the legislation of Congress, in what it does prescribe, manifestly indicates that it does not intend that there shall be any further legislation to act upon the subject matter. Its silence as to what it does not do is as expressive of what its intention is as the direct provisions made by it. . . . The will of Congress upon the whole subject is as clearly established by what it has not declared as by what it has expressed."

In his complaint plaintiff set forth his duties and the conditions and circumstances under which he was called upon to perform them : He "spotted" the turntable from the cab by means of the lever. Then, in order to ascertain whether the "spotting" had been correctly done, it was necessary for him to leave the cab and go to a position alongside of the tracks. Finding the tracks properly adjusted he then signaled the hostler to run his engine on to the table. This table had been but recently put in operation, was not well balanced, and the balance was carelessly and negligently maintained by the piling of sacks of sand upon one end of the table. In the night the table was in total darkness saving when there was flashed upon it the small bull's-eye lantern carried by plaintiff. These piled sacks in the night-time gave to the table an additional hazard in that one was liable to stumble over them in the dark. The failure adequately to light this turntable, in conjunction with the sacks of sand piled upon it, is charged as negligence. In order to signal the hostler it was necessary for the plaintiff to walk across the turntable. Plaintiff was in the act of picking up his lantern preparatory to signaling the hostler when the hostler carelessly and negligently and without receiving any signal backed his engine on to the turn-

table.  Plaintiff in endeavoring to escape the engine-tender fast approaching him, in the darkness stumbled over the sacks and was thrown across one of the turntable tracks and was thus run over and injured.  One of the defenses was contributory negligence, a defense open to appellant under the Federal Liability Act, a defense of which it was deprived by virtue of the instructions which the court gave.  The injury thus sustained by appellant is manifest.

Something further needs to be said in contemplation of the new trial which must be ordered.  One of the defenses which defendant sought to establish was that the hostler in backing his engine did so in compliance with the signal given him by plaintiff himself.  Upon this the complaint charged in the following language: ''While the plaintiff was so engaged in picking up said lantern and preparing to signal, said hostler carelessly and negligently and without receiving any signal from the plaintiff drove said engine upon said turntable,'' and the answer made was: ''Defendant denies that while the plaintiff was engaged in picking up his said or any lantern, or preparing to give the signal to the said or any hostler, the said or any hostler carelessly or negligently drove said engine upon said turntable.''  Respondent argues that here is a complete failure upon the part of appellant to deny that no signal was given.  Unquestionably in the matter of this denial the answer is susceptible of improvement, but by both parties upon the trial it was taken as an accepted fact that issue was joined upon this proposition, and much evidence *pro* and *con* was admitted without objection upon the question.  It is a familiar principle that the case having been tried upon this theory without objection neither party will be allowed to present it in this court for the first time.  (*Tulley* v. *Tranor,* 53 Cal. 274; *Horton* v. *Dominguez,* 68 Cal. 642, [10 Pac. 186]; *Illinois Trust & Sav. Bank* v. *Pacific Ry. Co.,* 115 Cal. 285, 297, [47 Pac. 60]; *Gervaise* v. *Brookins,* 156 Cal. 110, [103 Pac. 332].)

Appellant further argues that no evidence of legal sufficiency was adduced to show any negligence on its part.  It is not disputed that the plaintiff himself furnished evidence upon all these matters of asserted negligence, but the answer is made that the evidence is incredible.  There are exceptional cases such as that of *Blankman* v. *Vallejo,* 15 Cal. 638, 639, *County of Sonoma* v. *Stofen,* 125 Cal. 32, 35, [57 Pac. 681],

*Atchison, T. & S. F. Ry. Co.* v. *Baker* (Ind. Ter.), 104 S. W. 1182, and *People* v. *Milner*, 122 Cal. 171, [54 Pac. 833], where in effect it is declared that the judgment of a court is not to be based on or controlled by the testimony of a witness testifying to a fact inherently impossible. But this case does not come within that category. The weight of the evidence upon the question of the defendant's negligence was for the jury under proper instructions of the court.

The judgment and order appealed from are reversed.

Melvin, J., Lorigan, J., Shaw, J., Sloss, J., and Angellotti, C. J., concurred.