THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* C. D. SANDS, Defendant and Appellant.

No. 5665. Argued May 9, 1935.—Decided November 6, 1935.

*Martínez Nadal & Navarro Ortiz* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

 Sands was convicted of embezzlement and says that the district court erred in overruling a motion for a new trial.

The first ground of the motion was that the district court had erred in permitting a certain witness, who was not a certified public accountant, to testify as an expert. When the objection was made at the trial, counsel for defendant were unable to produce the law invoked by them. When the district judge proposed a recess, defendant withdrew the ob-

jection. When the district attorney continued his examination of the witness, with a view to qualify him as an expert accountant, counsel for defendant protested that this was unnecessary as the objection had been withdrawn. Some quibbling ensued as to the nature and extent of the admission which counsel for defendant was willing to make and after some further examination of the witness, he was permitted to testify. Counsel for defendant then excepted to the ruling of the court on the ground that the witness had not produced any license to practice as a certified public accountant in Puerto Rico and had admitted on the stand that he was not a certified public accountant.

Aside from any question of waiver, the preliminary investigation established the fact that the witness was qualified to testify as an expert accountant. We can not agree with counsel for appellant that the subsequent testimony of this witness indicated that he was not so qualified.

■■ Another ground of the motion was that the verdict was contrary to the evidence adduced by the prosecution. The explanation of this ground as given in the motion follows:

"... This contention rests on the examination of witness Juan G. García, head of the accounting department of complainant Central Aguirre Sugar Company. It was incumbent on said witness to countersign all checks made out by the cashier, C. D. Sands, defendant herein. This witness testified that on November 2, 1932, the defendant, in his capacity as cashier of the central, made out the said check for $28,050, and although an error was committed in the entry of the check in the cash book by writing the sum of $18,050 instead of $28,050, the said witness while testifying at the trial admitted that the pay roll of the central for that week, the last of the month, amounted approximately to $28,050, and that the said pay roll was fully paid from the said check for $28,050. This shows the innocence of the defendant in the present case since he did not profit personally in the least nor was the complainant central prejudiced at all by the said bookkeeping error made by the defendant in the cash book of the central."

To this appellant in his brief adds the following:

"In the present case there is not the smallest bit of evidence, either direct or circumstantial, tending to show that defendant C. D. Sands appropriated to himself any money belonging to Central Aguirre Sugar Company for his own benefit, or that any money was found on his person or in his home, or that he had deposited money in any bank on current account, or that he had invested money in any mortgage or loan, or had made remittances to the United States or elsewhere. It is surprising that on September 22, 1934, the cash book should have been balanced without showing any mistake or error in the trial balance and that exactly two months afterwards, that is, after the election, a new balance should have been struck at the request of defendant Sands with the result then, not that there was any shortage in the cash, or that any evidence had been discovered to the effect that defendant Sands had appropriated to himself any money and deposited the same in any bank, or invested it in any mortgage or loan, or sent it abroad, or spent it extravagantly having a good time, reveling, or with women, or in gambling, but simply that receipts amounting to $28,050 had been reduced to $18,050, and that disbursements amounting to seven thousand odd dollars had been increased to eleven thousand odd dollars, which, far from leading to the conclusion that the cash was short, should have led to the conclusion that there was a surplus, unless there had happened what did happen, a bookkeeping error in the entry in the cash book of the item of $28,050, but a correct cash balance, because, according to the testimony of Edwards and of García, the head of the office, the $28,050 of the check on the National City Bank, which was cashed for the pay roll of the Central Aguirre Sugar Co. for one week amounting to $28,050, was fully paid.

"So that the whole structure of the alleged embezzlement was merely, according to the testimony of the complainants, a bookkeeping error which did not in the least prejudice the Central Aguirre Sugar Co. and did not deprive it of any sum which legitimately should have appeared as really cash in hand."

We shall not attempt a rehearsal of all the testimony for the prosecution. García, himself a certified public accountant, not only went over the whole ground covered by Edwards, the expert accountant referred to in the first assignment, but also testified to many things not mentioned at all

in the brief for appellant. It will suffice to say that from his testimony and from the testimony of other witnesses it appears: that at about half past seven in the morning of November 22, 1932, Sands, cashier of the Central Aguirre Sugar Company, Inc., called García into the cashier's office and showed him on the floor of the vault where the books were kept a cash book from which the pages for the month of November had been torn out, whereupon Sands and García gathered up from the floor a lot of torn papers which had been scattered about and took them, with the mutilated cash book, into the office of the manager who had not yet arrived and with whom they then communicated by telephone; that later the vice-president of the corporation, the manager thereof and García recovered from a garbage dump on the beach other fragments of papers and Edwards, who had been summoned from San Juan, with the assistance of García succeeded, within the next few days, in piecing together the pages which had been torn out; that Sands, who had been informed of the recovery of the missing fragments from the garbage heap, on the morning of November 25, cabled to a member of his family in St. Petersburg, Florida, as follows: "Send me cable saying come immediately, urgent"; that on the afternoon of the same day he received in reply this message: "Come immediately, urgent"; that he exhibited this communication to García and to the manager of the Central indicating that it would be necessary for him to catch the next airplane for Miami; that this suggestion did not meet with the approval of those to whom it was submitted and he abandoned the idea of flying to Florida, that Sands was the only person who had a key to the inner door of the vault; that when confronted with the restored pages of the cash book he accepted the existence of a shortage and responsibility therefor; that he met a suggestion that it looked bad for him with an admission that this was so; that when asked if he was disposed to make good the loss he replied that if given 15 days within which to communicate with a brother

in California, he believed he could make it good; and that twelve or thirteen months later an insurance company, after a careful investigation, reimbursed the Central Aguirre Sugar Company to the amount of $10,000 in accordance with the terms of its bond.

García's testimony, in addition to the established fact of the shortage, was enough. It was not necessary for the prosecution to show that the money had been found in the possession of Sands or that he had deposited the same in some bank or had invested it or had sent it to the States or had squandered it in riotous living or had otherwise disposed of it.

After the defense had cross-examined the witness, García, after the district attorney had finished the re-direct examination and after one of defendant's attorneys had announced that he had no further question, the following incident occurred:

"Attorney Martínez Nadal:

"One question only.

"Q. The pay roll to which that check for $28,050 refers, was it paid?

"A. Yes, sir.

"That will be all.

"District Attorney:

"Q. But how much was missing when the cash was balanced?

"A. Fourteen thousand five hundred odd dollars.

"Q. Was the ten thousand dollars of the check included in that fourteen thousand odd dollars?

"A. Yes, sir."

The witness did not say that the pay roll in question amounted to $28,000.00, but that the pay roll had been paid. If, however, the statement can be construed to mean that the pay roll amounted to $28,000.00, the fact would remain, as brought out by the ensuing question and answer, that the difference of $10,000 between the check for $28,000 and the book entry of $18,000 had not been accounted for nor explained.

The verdict was not contrary to the evidence adduced by the prosecu'ion.

■ Another ground of the motion was set forth as follows:

"4. That this motion for a new trial is mainly based on newly discovered evidence that might be favorable to the defendant, which evidence, notwithstanding the exercise of the greatest reasonable exertion, he was unable to discover and submit at the trial. We will make the following statements in regard to the newly discovered evidence:

"A. That long before the trial of the present case, the defendant, desiring to see and examine the vouchers and receipts of the pay roll of the previous week and the last days of the month prior to November 2, 1932, for the purpose of showing thereby at the trial that the amount of the check for $28,050 made out by the defendant on the said November 2, 1932, was fully used in the payment of all expenses corresponding to the said pay roll of the last week and the last days of October, 1932, called in person at the accountant's office of the complainant central and there sought to examine the said vouchers and receipts as well as the cash book of the Ponce & Guayama Railroad Company (which is owned by the Central Aguirre), whereupon the head of the said office told the defendant that both the vouchers and receipts of the said pay roll of the Central Aguirre, as well as the cash book of the Ponce & Guayama Railroad Co., could not be seen and examined by him because the same had been lost or mislaid, having entirely disappeared; that subsequently the defendant, when his counsel began to take steps to see and examine the said vouchers and receipts as well as the cash book of the Ponce & Guayama Railroad Company in order to submit them in evidence at the trial, told Attorneys Martínez Nadal, Navarro Ortiz and Vicente Palés Matos (who was also counsel for defendant) that the said cash book and the said vouchers and receipts had been mislaid and lost and had totally disappeared, and that notwithstanding his efforts in search of such evidence he had failed to locate them or discover their whereabouts; that he thus gave full credence to the statements of Juan G. García, an employee of the Central, who told him that he could not see or examine the same because they had been lost. The defendant further alleges here that the cash book of the Ponce & Guayama Railroad Company, as he knew of his own knowledge, included in its entries all the necessary data to show that part of the

$28,050 amounting approximately to six or seven thousand dollars had been disbursed for the pay roll of the Ponce & Guayama Railroad Company, which expenses were paid weekly by the Central Aguirre as the owner thereof; that the said six or seven thousand dollars and besides the receipts and vouchers of the said pay roll of the Central Aguirre amounting to more than $20,000 showed or would have shown most satisfactorily that the said $28,050 was wholly disbursed for the pay roll of the Central Aguirre and the Ponce & Guayama Railroad Company; that after the defendant had taken all the said steps to secure the said receipts and vouchers and the cash book of the Ponce & Guayama Railroad Company and that after calling at the office of the complainant Central and being assured by the head of the said office that both the cash book and the receipts and vouchers had disappeared entirely, and that having made further fruitless efforts and being convinced of the loss of the said evidence, he advised to that effect his aforesaid three attorneys who were also endeavoring to find and examine them or locate their whereabouts, in order to submit the same at the trial held on the 23rd of last April.

"B. The defendant further alleges that at the trial of this case the prosecuting attorney offered in evidence an iron safe full of papers, some of them torn, which safe contained about one thousand documents; that the prosecuting attorney stated at the trial that he submitted the said safe in evidence in order to show that it contained many torn receipts and documents but without explaining the kind of such receipts and documents and their date, and that because of this the attorneys for the defendant objected to the admission of said evidence on the ground that it was impossible to read so many documents without stating their contents, but that the court admitted in evidence the said iron safe containing about one thousand receipts and documents, some of them torn; that at that moment, when the prosecuting attorney submitted in evidence the iron safe containing such a large number of papers, neither the defendant nor his three attorneys, who were then present, suspected that the receipts and vouchers of the pay roll paid out of the said check for $28,050 could be there; that thus the case was tried without either the defendant or his attorneys being able to realize that they could possibly secure the evidence which they had so much sought, consisting of the said receipts and vouchers.

"C. That after the jury had rendered its verdict in the case which was tried on April 23 last and a few minutes after the verdict had been announced, the defendant, and Attorney F. Navarro

Ortiz, approached, out of mere curiosity, the said iron safe and after looking at and examining it were surprised to find and discover in the said safe, among the heap of papers within it, the greater part of receipts and vouchers of the pay roll of the Central Aguirre, corresponding to the previous week and the last days of the month prior to November 2, 1932, on which date the defendant made out the said check for $28,050; that thereupon Attorneys F. Navarro Ortiz and Vicente Palés Matos, together with the defendant, after conferring on the matter of the discovery of such evidence which they had so diligently sought before, resolved to bring the matter immediately to the knowledge of the other attorney for defendant, Rafael Martínez Nadal, who had left for Mayagüez, and a few days afterwards, in San Juan, at a meeting between the defendant and his three attorneys at 18 Allen Street to consider the procedure to set aside the trial held, in order to be able to submit to the court the evidence so long sought and which they had at last discovered, then and there, at the said meeting which was attended by expert and public accountant Constantino Fernández, legally authorized to practice in Puerto Rico as accountant, which he has been doing for more than twenty years, said Constantino Fernández advised the defendant and his attorneys that the cash book of the Ponce & Guayama Railroad Company is at present in the accounting office of the complainant Central Aguirre, of which he was absolutely certain. Now we contend that in said cash book, as above stated, is to be found in detail evidence to the effect that part of the said $28,050, that is, a sum approximately amounting to six or seven thousand dollars, was used for the pay roll of that week of the Ponce & Guayama Railroad Company which is owned by the Central Aguirre; that the defendant and his attorneys, until that date when they heard the statement from accountant Constantino Fernández, were absolutely under the belief that the said cash book did not exist, because it had been lost or mislaid, or had been stolen, as above stated; and that the said book having turned up, or being already certain that it is at present in the accounting office of the Central Aguirre, and being also sure that the receipts and vouchers of the said pay roll of the Central Aguirre corresponding to the days prior to November 2, 1932, are in the said iron safe which the prosecuting attorney submitted in evidence at the trial, as has been stated, consequently the defendant and his three attorneys are now absolutely certain that if a new trial were held in the present case they could introduce in evidence said cash book and the said receipts and vouchers, and that such documents would show satisfactorily at the new trial that the defendant

did not derive any benefit from the said check for $28,050, nor was the Central Aguirre prejudiced thereby, since all that money was used and spent for the pay roll of the Central Aguirre and for the pay roll of the Ponce & Guayama Railroad Company owned by the Central Aguirre, which could be plainly shown and justified by the introduction in evidence at the new trial of the said cash book and the said receipts and vouchers.

"D. The defendant further contends that the evidence under consideration, both the receipts and vouchers which are kept in the said iron safe and the cash book of the Ponce & Guayama Railroad Company which is now kept in the accounting office of the Central Aguirre, are material evidence because they refer to the issue raised at the trial, and that the said issue is material and not collateral because said evidence tends to show that in the present case there was only a bookkeeping error when writing down in the cash book the sum of $18,050 instead of $28,050, because the said $28,050 was fully used in the pay roll of the Central Aguirre and in the pay roll of the Ponce & Guayama Railroad Company; that the said evidence is relevant evidence and absolutely admissible, without any doubt whatever and that it is moreover plainly material because it contains all the necessary elements to bring about in the new trial the discharge of the defendant; that the said evidence refers to the issue of guilty or not guilty, because it shows that the defendant did not derive any benefit from the said sum of $28,050; that it is not additional evidence, that is, of the same nature as that heard at the trial, but new evidence which will entirely change the aspect of the case in favor of the defendant, because it will show that he is quite innocent, since the use of the said $28,050 was neither to his benefit nor to the prejudice of the Central, nor of anybody else, as shall be so proved by the said evidence; that it is moreover an evidence fully admissible, since the Central can not refuse to produce at the new trial the said cash book of the Ponce & Guayama Railroad Company, nor the said receipts and vouchers of the pay roll of the Central Aguirre, because both pieces of evidence are in its possession, and the Central can not refuse to produce the same, that the facts sought to be shown by said evidence could not be shown at the trial which had been held by means of any other evidence; and that the new evidence which we are trying to introduce at the new trial has no reference to new defenses or to facts that occurred subsequent to the trial, nor is it evidence known and discarded but evidence which

the defendant and his attorneys searched for with the greatest diligence prior to the trial and were unable to discover but which they discovered subsequent to the verdict in the aforesaid manner.''

García in a counter affidavit said:

''I solemnly swear that the last time I had a personal talk with the said C. D. Sands was on Tuesday, November 29, 1932, when he telephoned to me from the hotel to inform me that a policeman was there with a warrant and that he did not understand what that meant, because he had requested Mr. Bancroft to grant him 15 days so that he might communicate with his family in the States. That very day to which I am referring C. D. Sands was put in jail and I solemnly swear that I did not see him again until the day of the trial.

''I further swear that on no occasion neither I nor anybody connected with the Central Aguirre Sugar Company, the Ponce & Guayama Railroad Company, or Luce & Co., Ltd., advised C. D. Sands that the cash book and vouchers had been mislaid. Just on the night of Sunday, November 27, 1932, when C. D. Sands was called to the office to appear before Messrs. Bancroft, Oben, Edwards, and myself, C. D. Sands was not only told that all the books, cash vouchers, etc., had been found and the torn papers reconstructed, but they were shown him so that he might examine them and ascertain whether or not the difference we had found in the cash existed. That night he was repeatedly invited to examine at his discretion all the documents before him which were subsequently introduced in evidence in the case tried before this court, and I solemnly assert that after glancing at the papers there shown, but always without showing much interest in all that, C. D. Sands said: 'That if all the books showed a difference of $14,000 more or less, he thought it must be so, that is, that the difference existed, and it was then that C. D. Sands offered Mr. Bancroft to communicate with his relatives in order to try and get the money.' ''

From the stenographic record as to what occurred when the evidence now described as ''newly discovered'' was introduced at the trial, we take the following extract:

''District Attorney:

''* * * * * * *

''I am going now to submit to the court these books duly identified.

"Attorney Martínez Nadal:

"No objection whatever.

"Judge:

"Then the books.

"District Attorney:

"With the vouchers, Your Honor.

"Attorney Palés Matos:

"All of them?

"District Attorney:

"One by one with the items which appear in the book.

"Attorney Martínez Nadal:

"Provided they are dated from September 7 to September 22.

"District Attorney:

"And I am going to introduce the vouchers of the money received by him one by one, all of them signed by him.

"Judge:

"Then let the book be marked "Exhibit 3," the vouchers "Exhibit 4," and the income vouchers "Exhibit 5."

"Q.—Are these disbursement vouchers?

"A.—These are disbursement vouchers, the white ones are disbursement vouchers and the yellow ones income vouchers.

" * * * * * * *

"A.—We sent for Mr. Sands to come to the office and on his entering I asked him: 'Mr. Sands, when was the cash book balanced last?' and he answered: 'Two or three days ago.' To my question: 'Did you take any notes that would show what you did?', he answered: 'Yes, sir, I am going to fetch them,' whereupon he went to his office and brought this book which I present here and he said to me: 'This is the balance struck by me on November 17.'

"Q.—Is that an official book of the Aguirre?

"A.—No, sir. That may be done on any kind of book in order to satisfy oneself that the cash balance is correct.

"Q.—Were these figures made by Mr. Sands?

"A.—Yes, sir. All of them.

"Q.—What does the book prepared by Mr. Sands show?

"A.—With that book before us we then tried to check these items with the items appearing on the cash book and we then discovered that the first item, here, which shows the sum of $155,644.53, when compared with the cash book, showed a difference amounting approximately to $14,000.

"Q.—So that that private book which he kept together with the official books of the corporation which he was keeping also showed that sum?

"A.—Yes, sir.

"Q.—Which is a private book of his?

"A.—Yes, sir.

"To submit the same in evidence, Your Honor, he says that they are the figures of Mr. Sands.

"Attorney Martínez Nadal:

"No objection."

In disposing of the question of newly discovered evidence, the district judge, after setting forth certain elementary principles of law, said in part:

"If we apply the above cited jurisprudence to the case at bar, we may say that defendant C. D. Sands was for a long time the cashier of the Central Aguirre Sugar Company, Inc., and that nobody was in a better position than he was to know the system of keeping the books of the said corporation and to know in a clear and evident manner how the money received by him and which passed through his hands was spent.

"Moreover, if Mr. Sands knew that his defense depended on certain vouchers and books of the Central Aguirre and that such documents had been refused to him notwithstanding his request to the directors of the said corporation, he ought to have moved this court for the production of the said books for their examination as evidence in his case. He failed to do this, which shows, in our opinion, that he did not use in the present case due and reasonable diligence as required by law. In connection with this the following doctrine may be cited:

" 'A new trial will not be granted on the ground of newly discovered evidence, where the evidence claimed to have been newly discovered was known to the party before or at the time of the trial.' *People* v. *Lyle*, 4 Pac. 977; *County of Sonoma* v. *Stofen*, 125 Cal. 32, 57 Pac. 681.' "

We find no reversible error in the overruling of the motion, and the judgment appealed from must be affirmed.