[S. F. No. 4226. In Bank.—November 30, 1907.]

## RUDOLPH SPRECKELS, Appellant, v. R. W. GORRILL, Respondent.

PLEADING — RESCISSION OF CONTRACT — SUFFICIENCY OF ALLEGATIONS — FAILURE TO DEMUR—DEFECT CURED BY VERDICT.—Where a complaint for rescission on the ground of fraud fails to allege directly that statements made by the seller were false, or that the seller knew them to be false or did not believe them to be true and intended to deceive the buyer, but contains allegations that imply such fraud and deceit, it is sufficient in the absence of a special demurrer, and the defect is cured by verdict or decision expressly finding these facts and cannot be raised on appeal.

ID.—FRAUDULENT INTENT—" FALSELY AND FRAUDULENTLY " SUFFICIENT ALLEGATION. — In the absence of a special demurrer and after a favorable decision or verdict, allegation that statements were made "falsely and fraudulently" is sufficient to imply that the seller

knew his statements to be untrue or made them in a manner not warranted by his information.

ID.—RESCISSION — INTENT TO DECEIVE NOT ESSENTIAL — ESSENTIAL INTENT.—A defrauding party making statements which he knows to be untrue, or having no grounds for believing them to be true, will not be protected by the absence of intent to .deceive. Having deceived the buyer and profited by it he cannot defeat liability or retain any advantage on the ground that he did not intend to deceive. Intent to deceive in such cases is not essential. The essential intent is the "intent to induce another party to enter into the contract" and is here sufficiently alleged.

ID.—RESCISSION — FRAUD — DAMAGE — ALLEGATION UNCERTAIN AS TO AMOUNT. — Fraud that produces no injury is not ground for rescission or damages, but injury need not be measurable in money and need be only slight. The fraud is essential, the amount of damage secondary. An allegation that fraud caused a specific amount of damages is not required. Allegation of material injury is sufficient in absence of special demurrer for uncertainty of amount.

RESCISSION—FRAUD—RIGHTS OF BUYER—MEASURE OF DAMAGES—PRICE. .—One who buys property is entitled to the full value of the property regardless of the price. If property is bought for certain qualities which it is falsely represented to have it is no defense that the property without the qualities was worth the price or more. The question is, If the property were as represented, would it have been of greater value than it actually was? The price is immaterial except as evidence on the question of value.

RESCISSION NECESSARY—RESTORATION—HOW DETERMINED.—Under the code it is only necessary that the rescinding party shall "restore to the other party everything of value which he has received from him under the contract." If such restoration is possible, rescission will be enforced even if the party cannot be placed in precisely the same place he previously occupied. Whether or not such restoration has been made is determined by considering the entire contract and the purposes and objects of the parties as disclosed by the contract.

RESCISSION—EXECUTORY CONTRACT—CHANGE IN CONDITION SUFFICIENT RESTORATION.—Where the contract is executory and restoration is offered before it is executed, part performance of a condition of the contract as contemplated is not such a change in condition as to preclude restoration. If the defrauding seller can be placed in the same position at the time of the attempted rescission which he would have occupied if the sale had not occurred and he had kept the stock, equity is satisfied and the defrauded buyer should be relieved.

RESCISSION — RESTORATION — DEPRECIATED PROPERTY — RELIEF.—If the value of property fraudulently sold has depreciated and the defrauding seller should not in equity suffer the loss, the court can abate the consideration and award the defrauded buyer what is just.

CONTRACTS—TRUTH OF REPRESENTATIONS—RELIANCE UPON CONTRACTING PARTY.—Party to contract can rely upon express statement of a

fact the truth of which is known to the opposite party and unknown to him as the basis of a mutual agreement, and he is not required to investigate and verify the truth of such statement.

OWNERSHIP—NOVELTY—STATEMENTS AS TO FACTS.—Statements as to ownership of a patent and novelty of a device are not matters of opinion but matters of fact.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Bishop, Wheeler & Hoefler, Charles S. Wheeler, and J. F. Bowie, for Appellant.

Van Ness & Redman, T. C. Van Ness, and Ralph C. Harrison, for Respondent.

SHAW, J.—This is an action to recover money alleged to have been paid by the plaintiff to the defendant as the price of certain corporate stock. The plaintiff appeals from the judgment and from an order denying his motion for a new trial.

The complaint alleges that Gorrill was the manager of a corporation known as the Pacific Car Equipment Company; that on the fifteenth day of April, 1899, he offered to sell to Spreckels three hundred shares of the stock of said company at the price of twenty-two thousand five hundred dollars; that for the purpose of inducing Spreckels to buy said stock Gorrill at that time falsely and fradulently represented to Spreckels that said company was the owner of a certain United States patent for a metal cap or thimble, for use on the journals of car axles, that said patent also covered the manner of affixing the same to the journal, that said device and the manner of attaching it was new and theretofore unused, and that said patent gave the company the exclusive right to make, use, and sell said contrivance; that Spreckels was without knowledge and information on the subject and relied wholly on the said statements of Gorrill, as Gorrill well knew; that Spreckels believed said statements and relied thereon and was thereby induced to, and thereupon did, buy from Gorrill the said stock and pay him therefor the said sum of money; that in Decem-

ber, 1899, Spreckels discovered that in fact no patent for such cap or thimble, or for the manner of attaching the same to the journals, ever belonged to said company, that the said contrivance was not new, but, on the contrary, that the same had been in use for months and was not, and could not be, the subject of a United States patent; that Spreckels, promptly upon such discovery, gave notice to Gorrill that he rescinded said contract of purchase and tendered and offered to restore the said stock to Gorrill upon the condition that Gorrill would restore to Spreckels the money paid therefor; that Gorrill refused to accept the stock or restore the money, and that Spreckels was still ready and willing to restore said stock and offered to do so upon the payment of the money. The prayer of the complaint was for judgment against Gorrill for twenty-two thousand five hundred dollars and for such other, further, different, or additional relief as should be found proper.

The respondent contends that the complaint is deficient in its statement of facts. It is claimed that it fails to allege that Gorrill knew the statements he had made were false, or that he did not believe them to be true and intended to deceive Spreckels, or that the statements were not true. There is no direct averment that the alleged representations by which Spreckels was induced to buy this stock were not true. The allegation is that in December, 1899, Spreckels discovered that no such patent belonged to the company and that the device described was not new or patentable. This allegation, however, necessarily implies that the statements of Gorrill were untrue. Spreckels could not "discover" that the company did not own the patent or that the device had been in previous use and was not patentable, if, in fact, it did own the patent, or if the device was new and patentable. He could not discover facts that did not exist. Furthermore, it is alleged that the statements were made "falsely and fraudulently," and this also implies that they were not true. If the objection had been raised by a special demurrer for uncertainty, perhaps it might have been held fatal, but no demurrer was filed to the complaint. The defendant answered denying practically all the substantial allegations of the complaint, the case was tried apparently upon the theory that the complaint was sufficiently direct and positive in this respect, and findings were made by the court stating directly that said statements were made by

Gorrill to Spreckels and that they were not true and were made in a manner not warranted by the information possessed by Gorrill. The lack of a direct allegation that the statements were untrue, conceding it to be a defect, is one of that character which, in the absence of a special demurrer, is cured by the verdict of the jury or the finding of the court, and which cannot be taken advantage of when urged for the first time on appeal. (*Sakeforth* v. *Lord,* 87 Cal. 402, [25 Pac. 497] ; *Doble* v. *Keystone Co.,* 145 Cal. 494, [78 Pac. 1050] ; *Santa Barbara* v. *Eldred,* 108 Cal. 297, [41 Pac. 410] ; *Treanor* v. *Houghton,* 103 Cal. 54, [36 Pac. 1081].)

The same rule applies to the defective allegation of fraudulent intent on the part of Gorrill. While the allegation that he made the statements "falsely and fraudulently" to induce Spreckels to buy, might not in the face of a proper special demurrer, supply the place of a direct allegation that Gorrill knew them to be untrue or made them in a manner not warranted by his own information, although he believed them to be true, nevertheless, it implies all this, and, where no special demurrer is interposed, it will be held sufficient after the verdict or decision upon the merits.

The lack of a more definite averment of an intent to deceive is immaterial. If one makes material false statements to another, to induce that other to buy an article and which does induce him to buy to his injury, the defrauding party either knowing them to be untrue, or believing them to be true, but having no sufficient ground for such belief, he will not be protected from liability for his fraudulent conduct by the fact that he did not intend to deceive the other party. Having actually deceived such other party and having profited by such deceit, he cannot be allowed to retain the advantage, or defeat liability, on the ground that he acted in good faith without actual intent to deceive. Nor is such intent, in such a case, a necessary element of the fraud which forms the basis of the cause of action. The intent which is essential is the "intent to . . . induce another party to enter into the contract." (Civ. Code, sec. 1572.) This intent is specifically alleged in the complaint.

It is also claimed that the complaint is insufficient because of the absence of any showing therein that any pecuniary damage was caused by the fraud alleged. It is true that there is

no express allegation that plaintiff suffered pecuniary damage therefrom, but in cases of this character this is not necessary. That fraud which has produced, and will produce, no injury will not justify a rescission, nor support an action either for rescission or damages, is an established principle of law and equity. But there is no rule that the injury must be of such a nature that it can be accurately measured in money. And we know of no rule of pleading which, in an action based upon a rescission between the parties or seeking to enforce such rescission, requires a statement that the fraud complained of had caused or would cause a specific amount of damages. It may be conceded that it must be shown that the plaintiff, by reason of the fraud, suffered an injury of a pecuniary nature, that is, an injury to his property rights, as distinguished from a mere injury to his feelings, but it will be sufficient if the facts alleged show that material injury will necessarily ensue from the fraud, although the amount of the pecuniary loss is not stated. Such injury is shown by the facts alleged in the present case. Upon the contract as made plaintiff was entitled to that for which he bargained and which, by means of the representations made to him, he was led to believe he purchased by his bargain. This was three hundred shares of stock of a corporation which owned, as part of its capital stock, a patent for the device described, a patent which would secure to it the exclusive right to make and sell that device. If, by reason of the falsity of the statements, or in other words, by reason of the fact that the company did not own and could not obtain this patent, the plaintiff received shares of stock which did not represent any interest in such patent, and which, therefore, would be worth that much less than otherwise, he was injured and damaged to the extent of the difference between the value of his stock with the property of the corporation as it actually existed, and the value of his stock as it would have been had the corporation actually owned the patent. The value of such a patent is not stated, nor is the actual value of the stock averred. It is not contended, however, that the supposed patent would not have added materially to the value of the stock, and it is distinctly alleged and found that Spreckels would not have bought or paid for the stock if he had not believed that the company owned the patents. This sufficiently discloses the fact that the possession of these patents was, to

him, a material element in the bargain. It further appears that the device had been in common use for many years and from this it necessarily follows that the exclusive right to make and sell it would have been valuable and that the possession of such right by the corporation would have made the stock of greater value than it was without that right. Hence it follows that it is not true that the pleading does not show pecuniary injury. Mr. Pomeroy says: "If any pecuniary loss is shown to have resulted, the court will not inquire into the extent of the injury; it is sufficient if the party misled has been very slightly prejudiced, if the amount is at all appreciable." (2 Pomeroy's Equity Jurisprudence, sec. 898; *Wainscott* v. *Occidental Assn.*, 98 Cal. 255, [33 Pac. 88].) If the defendant desired a more explicit statement showing the amount of the pecuniary loss he should have presented the objection by means of a demurrer for uncertainty in that particular. The fraud is the essential thing; the precise amount of damage being of secondary importance. (*Wainscott* v. *Occidental Assn.*, 98 Cal. 257, [33 Pac. 88]. In this connection we may notice a further proposition, which also arises upon the findings. The court finds, as a fact, that plaintiff suffered no damage by reason of the representations of the defendant except as damage is to be inferred from the facts found. The plaintiff paid twenty-two thousand five hundred dollars for the stock and it is neither alleged nor found that the stock was actually worth less than that sum. It is urged in argument that, as there is no presumption that it was worth less, it must be presumed that it was and is worth at least that amount, that plaintiff is, therefore, as well off with stock of the cash value of twenty-two thousand five hundred dollars as he was with the money in his possession with which he bought the stock at that price and hence that he has suffered no detriment. If this proposition were correct, it would at once put an end to actions founded on injury from a purchase induced by fraudulent representations as to the character or quality of the property purchased, except in cases where the purchaser could show that·he made a bad bargain independent of the false representations. One who buys property is lawfully entitled to all the benefit of the purchase, that is, to the full value of the property he buys, regardless of the price he paid. And it is a fundamental principle of the law of fraud that where one has, by false and

fraudulent representations as to the quality of property, led another to believe it to be possessed of valuable qualities and thereby wrongfully induced the other to buy the property, presumably in order to obtain the benefit of property possessing those qualities, the seller will not be allowed to show as a defense to an action for such fraud, that the property, in its actual condition, was worth the price paid, or more. The real question in all such cases is whether or not the property, if it had been as represented, would have been of substantially greater value than its actual value in its real condition. The price actually paid is immaterial as an element in the cause of action, though it may be admissible evidence on the question of value. (*Cruess* v. *Fessler*, 39 Cal. 336; *Murray* v. *Jennings*, 42 Conn. 9, [19 Am. Rep. 527]; *Estes* v. *Odom*, 91 Ga. 600, [18 S. E. 355]; *Antle* v. *Sexton*, 137 Ill. 410, [27 N. E. 691]; *Medbury* v. *Watson*, 47 Mass. 246, [39 Am. Dec. 726]; *Williams* v. *Kerr*, 152 Pa. St. 560, [25 Atl. 618]; *Nysewander* v. *Lowman*, 124 Ind. 584, [24 N. E. 355]; *MacLaren* v. *Cochran*, 44 Minn. 261, [46 N. W. 409]; *Harlow* v. *La Brum*, 151 N. Y. 278, [45 N. E. 859]; *Martin* v. *Hill*, 41 Minn. 343, [43 N. W. 339]; *Smith* v. *Countryman*, 30 N. Y. 670; 4 Sutherland on Damages, sec. 117 and cases cited; Am. Dig., vol. 23, columns 1810, 1811, citing many cases.)

For example, in *Murray* v. *Jennings*, 42 Conn. 9, [19 Am. Rep. 527], the plaintiff exchanged a pair of oxen for a horse, upon the representation of the defendant that the horse was sound. The horse proved unsound and the plaintiff sued for damages for the deceit. The horse, in its unsound state, was worth one hundred and twenty-five dollars. If it had been sound it would have been worth $225. The oxen were worth only one hundred dollars. Plaintiff recovered one hundred dollars as the difference between the value of the unsound horse and its value if it had been sound. This was said to be correct and the value of the oxen held immaterial, the court saying: "The law gives her (plaintiff) the benefit of the contract, and places her with respect to it, and to all her rights under it, in the same position as if no fraud had been practiced upon her, and as if the horse was as sound and valuable as she had a right, from the defendant's representations to her, to believe it was." There are some courts of high authority which adopt a different rule in regard to suits for damages for

deceit, and take the difference between the price paid and the real value of the thing bought as the measure of damages. (4 Sutherland on Damages, sec. 1172.) But we know of no case where such a rule has been applied in equity in suits to rescind contracts where the suitor has been induced by fraud to buy property which he would not have purchased but for the fraud. Some of the cases above cited, indeed, go further and hold that the question of the comparative value of the property as it was, and as it was represented to be, is not important in cases of rescission, nor at all, except in an action at law for damages for the deceit, and that in equitable actions a party will be relieved from a contract induced by such fraud if it appears that he was led into it by a false statement as to a fact affecting the property which he, himself, deemed material, although others may think the fact would not add to the value of the property or to the benefit to be derived therefrom. We need not go so far in this case. It is enough that the rule above stated is the one particularly applicable to the present case, and that the pleadings, evidence, and findings upon this point make a case in favor of the plaintiff.

At the conclusion of its findings the court below stated that, by reason of the facts previously found, the plaintiff did not restore, or offer to restore to the defendant everything of value which he had received from defendant under the contract, and that he could not do so, and that for said reason, only, the court finds that the plaintiff did not rescind the contract. This statement seems to have been the basis of the judgment in favor of the defendant. We think this statement is incorrect, and that the judgment is not supported by the facts found. The findings are much more elaborate than the pleadings and in order to make the complaint clear it will be necessary to state the additional facts referred to.

At the time of the sale of the stock to plaintiff it was understood and agreed by and between the plaintiff, the defendant and certain other persons who also bought shares of the stock, that a new corporation should be formed by them, that the assets of the Pacific Car Equipment Company should thereupon be transferred to such new corporation and that the shareholders of the Pacific Car Equipment Company should receive shares of the new corporation in lieu of their shares in the old company. This agreement was consummated in part.

A new corporation was formed called the National Car Equipment Company. The original company had two thousand five hundred shares of stock of the par value of one hundred dollars each. The new corporation had one hundred thousand shares of the par value of one hundred dollars each. All of the assets of the old company were transferred to the new corporation and it was agreed that each stockholder of the old company should receive shares in the new corporation in the proportion of twenty shares of the new stock in exchange for one share of the old stock. There the enterprise appears to have halted. No stock of the new corporation has ever been issued, nor have any of the certificates of stock in the old company ever been surrendered to be exchanged for the new stock. Among the assets of the old company transferred to the new corporation, was the sum of $8125.57 in money. At the time Spreckels offered to rescind the contract the new corporation had expended of this money, for advice of attorneys regarding the property transferred from the old company, the sum of $666.26, and had incurred debts to the amount of $2608.77, which remained unpaid.

It is claimed that by reason of these transactions the conditions had so materially changed that it was impossible for Spreckels to restore to Gorrill everything of value which he had received under the contract, in other words, that the delivery to Gorrill of the stock he sold to Spreckels would not have restored Gorrill to the position he was in immediately before the sale, which is the form in which defendant's counsel prefers to state the proposition. This latter, however, is not an accurate statement of the rule. Under the code it is only necessary that the rescinding party shall "restore to the other party everything of value which he has received from him under the contract." (Civ. Code, sec. 1691.) If such restoration is possible, rescission can be accomplished and will be enforced even if the party is not placed in precisely the position which he previously occupied. In considering the question whether or not such restoration has been made or offered, regard must be had to the entire contract under which the property bought was received, and to the purposes and objects of the parties in making that contract, so far as they are disclosed by the agreement. The agreement in question was more than a mere contract for the purchase and sale of

the stock. That was a material part of the agreement, but it was supplemented by and connected with an additional understanding that a new corporation was to be formed, that the assets of the old company were to be transferred to the new one, and that each shareholder was to receive a proportionate share of the new stock in exchange for the old stock held by him. It is also apparent from the circumstances disclosed by the agreement and the facts found that there was an understanding that the parties concerned should co-operate in carrying on the operations of the new corporation. The stock received by Spreckels under the contract was held by him subject to all the terms of the agreement, not perhaps as conditions subsequent, but as conditions of the contract by which he obtained the stock and which were binding upon him as part of his agreement. The fact that, prior to the offer of rescission, part of the original agreement had been performed as contemplated, did not so change the conditions as to give the defendant the right to object that he could not be placed in *statu quo* because thereof. It was the identical change for which he had contracted. The obligation to accede to and carry out these objects, was, in conscience at least, a burden on the ownership of the stock, and when Spreckels offered to return it subject to the same burden so far as it was not discharged by performance, he did, in fulfillment of every demand of equity and good conscience, offer to restore to Gorrill everything of value that he had received under the contract. By accepting the stock Gorrill would have obtained every right pertaining thereto which Spreckels possessed under the agreement upon which he bought it. The contract was in reality of an executory nature and before it was completely executed the injured party offered to return all that he had received by reason of it to the other party; and this occurred while the executory enterprise still remained in such a condition that it could be carried out as originally intended, except that Spreckels would no longer co-operate therein. The facts that some of the money transferred to the new corporation had been expended in the business which it was to carry on, and that it had incurred some indebtedness in the transaction of the business, would give Gorrill no right to object to the restoration. It was intended that the new corporation should be a

going concern, and this implied that it should expend money
and incur current expense in the transaction of its business.
There is no finding that the expenditure of this money, or
the existence of these debts, had reduced the value of its
stock.   In the absence of anything to the contrary, the pre-
sumption clearly is that the corporation had received full
value for the money expended and the debts incurred and
that the stock thereafter was worth at least as much as before.
Nothing is shown to the contrary.   It is usually impossible,
after the lapse of a considerable time, to place a person exactly
in the position he was in at the time he made the contract.
This is not what the rule contemplates in an enterprise such
as that here in question, where it was understood that the
parties should continue to co-operate to carry out its purposes.
If the defrauding party can be placed substantially in the
same position at the time of the attempted rescission, which
he, at that time would have occupied if the sale had not taken
place and he had retained the stock himself, the demands of
equity are fully satisfied and the defrauded party is entitled
to be relieved.

Furthermore, the complaint asks for a judgment for the
money, or "for such other, further, different or additional
relief as may be meet in the premises."   Where an offer of
rescission has been made and refused and the party is compelled
to go into court to enforce his right to rescind, the principles
of equity apply.   The rule laid down in section 3408 of the
Civil Code may be resorted to and if the court finds that the
other party cannot be placed wholly in *statu quo*, it "may
require the party to whom such relief is granted to make any
compensation to the other which justice may require."   In
effect, this is a suit to enforce a rescission which has been
offered and refused, and it is of equitable origin and nature.
Under our form of procedure whereby the distinction between
forms of action is abolished, the court could in this action
administer equitable relief, regardless of the question whether,
under former systems of jurisprudence, the action would be
deemed an action in *assumpsit* for the money paid, or an
action in equity to compel rescission and a return of the
consideration.   Therefore, even if it should appear that the
value of the new stock had materially depreciated and that
the circumstances were such that the defendant should not

in equity be made to suffer the loss, the court could do complete justice by abating a part of the consideration and giving judgment for such part thereof only as it should deem just. (*Green* v. *Duvergey*, 146 Cal. 379, [80 Pac. 234], and cases there cited; *California Farm and Fruit Co.* v. *Schiappa-Pietra*, 151 Cal. 732, [91 Pac. 593].)

The findings state that one George H. Strong, an attorney in San Francisco, was acting in behalf of the Pacific Car Equipment Company in the matter of obtaining the patents mentioned; that before he bought the stock, Spreckels was informed by Gorrill that Strong was acting as such attorney for that purpose and that Spreckels made no inquiry of Strong as to the truth of the representations of Gorrill. This neglect, if it can be so called, would not preclude Spreckels from complaining of the fraud practiced upon him by Gorrill. It does not appear that Spreckels at the time had any cause or reason to doubt the veracity of Gorrill, or the truth of his statements, nor that he was referred to Strong for further information or confirmation of the statements. One who makes statements false in fact, and induces another to buy property, cannot defeat liability for the false statements by showing that if the other party had suspected him of falsehood or doubted the accuracy of the statements, such party, by ordinary diligence and by inquiry of persons whom he knew to be cognizant of the truth, could have learned of the accuracy or falsity of the statements. "Every contracting party has a right to rely on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify the statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith." (*Mead* v. *Bunn*, 32 N. Y. 275, quoted and approved in *Dow* v. *Swain*, 125 Cal. 683, [58 Pac. 271]; *Smith* v. *Countryman*, 30 N. Y. 670; and see, also, cases cited below.)

There is no merit in the claim that the statements as to the ownership of the patent and the novelty of the device described were matters of opinion merely, upon which Spreckels had no right to rely. It is well settled that they constitute matters of facts. (*Rose* v. *Hurley*, 39 Ind. 83;

*David* v. *Park,* 103 Mass 502; *McKee* v. *Eaton,* 26 Kan. 226; *Tabor* v. *Peters,* 74 Ala. 97, [49 Am. Rep. 804]; *Hicks* v. *Stevens,* 121 Ill. 187, [11 N. E. 241].)

The judgment and order are reversed.

Angellotti, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.

Rehearing denied.