[Civ. No. 241.   Fourth Appellate District.—December 5, 1930.]

F. J. WILLIAMS et al., Respondents, v. ROSCOE A. MYERS et al., Appellants.

R. J. Welsh, Jr., and Norman T. Mason for Appellants.

Sarau & Thompson, Hewitt, Ford & Crump, Patrick F. Kirby and W. Joseph Ford for Respondents.

WARMER, J., *pro tem.*—The appeal herein is from a judgment for damages in an action for fraud. The action was tried by the court sitting without a jury. The complaint charges fraud. The transaction involves an exchange of real and personal property in Riverside County, California, for real and personal property in the county of Corson, South Dakota. There are a number of specifications of fraud pleaded in the complaint; first, as to the value of the land in South Dakota; second, that the defendants could then and there have sold the same for a greater sum than is alleged to have been fraudulently represented to be its value; third, conditions of the farm house and outbuildings; fourth, number of acres under cultivation, character of soil, as, being free from hard-pan, gumbo, adobe and stones, etc.; fifth, productivity of the soil; sixth, number of acres actually being cultivated and as to the number of acres capable of cultivation; also, that for the purpose of deceiving plaintiffs, defendants entered into a conspiracy with one Robert H. Jackson, cashier of the Security State Bank of McIntosh, South Dakota, to deceive and defraud plaintiffs by representing to them a false value of the said premises. The Security State Bank was given by the defendants as a reference as to the value of said lands. The answer assumes to deny the allegations of fraud and in addition thereto sets up a claim of fraud as against the plaintiffs as to the property they conveyed

to the said defendants. An objection as to the sufficiency of the answer is urged by the plaintiffs, claiming that the answer fails tó deny many of the allegations of the complaint setting forth the fraud claimed. Inasmuch as most, if not all, of the negotiations in this transaction were by mail, we will quote from some of the correspondence.

R. A. Myers wrote Williams on December 3, 1923, as follows:

"I am sending you a list of my farms for trade, and might state that all of these farms are rented for 1924, and are and have been good investments. Now you will see that it takes quite a while to get a letter down to you and one back, hence I am going to be frank and to the point with you and am pricing my farms down to what you will get from either of the following .Appraisal Boards, Miller and Miller of Watauga, S. D. and I might state that this is a small town just to the west of our town here on the Yellowstone trail, and these men had a mortgage at one time on two of these Farms, so they know the value. Also Streagel Abstract and Appraisal Co., McIntosh, S. D. Now here is the point I cannot trade these farms for inflated land in the Perris Valley as I can trade for almost anything up the Valley. I was in Perris and up to San Jacinto, and in fact spent the winter of 1921 and 22 in Southern Cal. But I will say that if your price is not inflated, this looks the best of any deal I have seen and nearer to my liken.

"Please send price, rather the personal property is Mtg. 'of not and rather the real estate is Mtg. If Mrtage is very large I would not be interested, as I do not care to trade of a big Mtg. I would suggest if you are interested to send me a complete inventory of personal property and explain everything in full, and upon receipt of your next letter I will know as rather or not I will be interested and if I am I have a friend in a Bank at Los Angeles that will go at once and look over the place with you.

"My land is all clear and if they have a Mtg. on there land I can assume there Mtg. and take back the same amount, if we get together on the land I trade them, the following is the list.

"160 acre farm 2-½ miles from town on a fine main road, telephone and rural route, nice farm house all finished and good barn, good well and windmill, all fenced and 100

acres in crop each year and balance Hay and Pasture land this farm is every foot tillable, and of the best of soil. This is rented for next year, and is sure a nice place, Price— $20,000.00.

"160 acre farm 3-½ miles from town on the Yellowstone trail, has a very fine large 10 room house, a dandy, two barns, all kinds of sheds and grainerys, three wells and windmill and tank. Fenced and 120 acres in crop each year. Balance is hay and pasture land. This is a very highly improved farm as the house could not be built at this time for less than $7000.00. Price $20,000.00.

"320 acre farm 3-½ miles from town 80 acre in crop each year and balance of this land is used for Hay purposes and sure get a good return each year. No buildings whatsoever. Price $20,200.00.

"320 acre farm 4 miles from town on a good road in a fine neighborhood. Always rented 300 acres of the finest tillable land and always rented and is rented for 1924. All fenced but no buildings; a small creek cuts off one corner, and provides water for the stock the year round, and is one of the best farms I have and is always in demand. Price $20,000.

"All of these farms lay on the finest roads we have here in Dakota, and they are without exception well located and in one of the best farming countries in the Middle West.

"Please let me know as soon as possible Mr. Williams, and if your parties realy want to get out and will be fair with me, I am sure we can deal as my lands will stand up under any inspection and are worth every cent I ask, and in 1919 if I had had sense enough to sell I could have sold for much more.

"I want the Ranch just as it is all stocked and ready for me to go on too as this is just what I was looking for. Thanks for the remembering me on the deal.

"I am,
"Yours resp.
"R. A. MYERS."

Williams wrote Myers on December 8, 1923:

"I am in receipt of yours of the 3rd inst. and note what you say as to your holdings. . . . Now the ranch fully equipped will appraise at from 120 to 125,000 I believe.

"The cattle and personal property will be about $26,000. from a sales standpoint and would possibly cost 35,000 to replace. . . . It is not located in the Perris Valley and not to be so considered at all.

"It is in what is known as the San Jacinto or Hemet Valley where conditions are entirely different.

"I am not trying to discourage or encourage but only wish to place the facts before you as near as I can. . . .

"Unless you can put in some cash there would be no use to even bother. Cattle and personal property here is cash spot. . . . etc."

On December 10, 1923, Mr. Williams wrote Myers:

"Have talked over matters with all interested parties and unless you can raise a reasonable amt. of cash it will be impossible.

"I believe I can arrange to take in about 75,000 of your holdings on strict appraisal, no other way, as that is only way you can negotiate same courtesy of fairness on this property as I wrote you the other day. The balance must be cash and mortgage . . .

"My advice to you is to get the first train and come out here and if it is impossible to figure your way get ranch or deal signed up subject to our parties investigating yours which will all be done from here by Realty Board or others. I am of course interested and am willing to take my interest in Dak. but I will have more or less difficulty in handling others as one of interested parties requires all cash which I must arrange for. . . . "

Williams again wrote Myers January 3, 1924:

"Have had a final discussion regarding offer with all interested parties. Now if your land will stand up on appraisal of bank there or other competent source I believe a deal can be made as follows:

"180 acres including all improvements, machinery, tools and equipment belonging to ranch and one or two teams of horses subject to $12,500 3 years. to include crops on land—for your lands as per your letter free and clear."

Myers wrote Williams January 7, 1924, in part as follows:

"Your letter of the 1st of this month rec. today and am answering everything in full so there will be no misunderstanding when we close up *if we do.* . . .

"I gave you the names of two firms in my former letter to wire or write to for appraisal price, and here is another the Security State Bank of McIntosh, S. D.

"Here is what I will do subject to inspection by self or party I send: I will trade the above places for your 180 acre ranch land, and you are to include at least 4 head of horses, one tractor in good shape and all farm machinery and milking machines etc. . . .

"I will give warrant deed and furnish abstract showing everything· clear and all taxes paid to date for my lands. Now you may wire me if expected, if you so desire, but I will consider the deal closed if you wire me as I will have to at once get the abstract Co. to make the abstracts to date which will be of great cost to me and will send all or bring them down which will còst me about 500. or more and if for any reason of yours and not mine, I will expect you to pay me damage if I come down and you don't deal. I am only telling you this so you will not misrepresent anything and we will have no trouble on the finish and will always be friends. If you wish to except and when you do if you just wire me that you except offer made by me January 7th, I will proceed to get out my deeds, come down or send them down, so the deal will go through slick as a whistle if your place is what you say. I really think you are telling. the truth or I would not go to this bother. Let me know soon, as my letters will reach you the 12th and I will expect to hear from you soon after that date."

Williams wrote Myers again January 15, 1924:

"Replying to yours of the 7th inst. beg to advise we are trying to secure definite information regarding values of your lands. If same is as you state I believe a deal can be closed as follows for your lands clear. . . .

"I believe you stated you paid $105.00 per acre for 320 or 160."

On January 19, 1924, Myers wrote Williams in part as follows:

"This offer is subject to my representative inspection. $500.00 at the best I can do to get my abstracts up to date the taxes paid and then all of the other expenses besides.

"So you can wire if you except this offer but do not do so unless you are sure that all of you that are interested

are satisfied, as I will be out a lot of money on your account and expect a compensation thereof; in case a change would·be made by you when I come up to the requirements you expect of me, as per this letter.

"Now Mr. Williams I am frank and want you to be for I have a-One farms here and will not trade them for something that is not worth the money. . . .

"All I can say yet is dont wire me until you are perfectly satisfied with my farms and my proposition. But must be done before the first of Feb. as if I don't deal with you I am taking a Dairy Farm just out of the city of Minneapolis, and am only assuming $2500.00.

"Please wire me soon after you receive this letter, which should be the 23rd or 24th, I am,

"Yours truly,
"R. A. MYERS."

Williams on January 21, 1924, wired Myers as follows:

"If you are ready can make arrangements to close deal per my letter recent date upon wire from you will hold until February First pending your examination."

On January 22, 1924, Myers wrote Williams in part as follows:

" . . . as per your telegram of today you are simply excepting your own offer. What I want is for you to except my offer. Please do something at once.

"R. A. MYERS."

The court found, among other things, that the statements and representations were made by said defendants as statements of fact and not as statements of opinion and were intended by the defendants to be statements of fact and not of opinion to the plaintiffs and were so understood by them. That plaintiffs relied upon and believed each and all of said statements and were thereby induced to and did enter into the exchange of properties as in plaintiff's complaint set forth and were˙ thereby induced to and did execute to the defendants, a deed to the property located in Riverside County and conveyed to the defendants in exchange for the South Dakota property. That in representing the value of defendants' property to plaintiffs, defendants intended to and did convey to plaintiffs the information that the

274

prices and values named by defendants were the reasonable cash market value of said properties; that the total reasonable market value of parcel No. 1 was $5,000; that parcel No. 2 was of a total reasonable value of $11,700; parcel No. 3 of a reasonable market value of $5,400. The court further found that had the property that was conveyed by the defendants to the plaintiffs herein been as represented, it would have been at all times of the reasonable market value of $80,200. In the condition in which said properties actually were, they were not of a value in excess of $29,500. That said lands and properties were represented by defendants to plaintiffs to be of the market value of $80,200; that the difference between the reasonable market value of said lands and the properties as so represented and as they were in fact was $50,700, and ordered judgment entered for that sum.

The record, by bill of exceptions, reveals the fact that the parties and the trial court proceeded with the trial on the theory that at least the allegations of the alleged false and fraudulent representations as to the value of the South Dakota property were sufficiently traversed, as both parties offered evidence on said issue and the court made its findings thereon from the evidence and not from any admission in the pleading upon said alleged representation as to value. Therefore, we shall assume, without deciding as to such representation, that the issue was properly joined. Defendants, appellants herein, attack the sufficiency of the evidence to support such finding.

The intendments are in favor of the judgment and if the evidence in support of the findings is substantial either with or without conflict the finding will be deemed sufficiently supported (*Hind* v. *Oriental Products, Inc.,* 195 Cal. 655 [235 Pac. 438]; *Hassell* v. *Bunge,* 167 Cal. 365 [139 Pac. 800]; *Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157]; *Ryder* v. *Bamberger,* 172 Cal. 791 [158 Pac. 753]; 2 Cal. Jur. 879; and the cases there cited). In examining the sufficiency of the questioned finding this court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account as well all inferences which might reasonably have been thought by the trial court to lead to the same conclusion.

(*Delannoy* v. *Quetu,* 73 Cal. App. 627 [239 Pac. 71]; *Menotti* v. *Marchesi,* 63 Cal. App. 49 [158 Pac. 753].)

The evidence as to the value of said South Dakota premises is sharply conflicting and under the above rule we are bound to accept as true that evidence which tends to support the finding, it being necessary to point out only enough of the evidence to show that the findings found support in the evidence. (*Bancroft-Whitney Co.* v. *Mc-Hugh, supra.*)

Myers must have known the meaning that Williams was placing upon the language used by him, because as early as December 10, 1923, Williams, in a letter to Myers, wrote: "I believe I can arrange to take in about 75,000 of your holdings on strict appraisal, no other way," and at all times during the written negotiations between these parties it was apparent that Williams was interpreting the language of Myers to mean that the prices placed upon his property in South Dakota by Myers were the market value thereof. The entire correspondence between these parties seems to appear in the record. The language used is not the most definite and certain; however, a letter appears in the record that is definite and certain and unquestionably was received by Myers prior to the consummation of this exchange, and while there is an objection to the letter when it was offered in evidence, such objection was properly overruled. In that letter Mercedes C. Williams, one of the parties interested in the California property offered for exchange, wrote Myers on January 28, 1924:

"I believe father has told you that we are all financially interested in the ranch—that is mother, father, my brother . . . and myself.

"We have been unable to learn anything definite as to your farms. The Realty Board, whom we expected would appraise or report on your farms, have notified us that they have no facilities in that part of the country for so doing, and since none of us have ever been in South Dakota, we are forced to rely upon your statements as to values and conditions there.

"Of course, the proper thing to do at this time, would be for father to go there and learn for himself just what the farms are worth, but unfortunately he is not in a

financial position to incur the expense of such a trip. Therefore, I trust you will understand just why I am writing you at this time, and realize how we are depending upon the truthfulness of your statements, if this deal is consummated.

"In your letters to father, you place a valuation of $80,200.00 on your farms. . . .

"You say the farms are worth every cent you are asking and that this is the fair and reasonable market value of the property for which you paid $105.00 per acre and could have sold for more."

After the receipt of such letter there is no possibility that Mr. Myers was not advised that the Williams were relying upon his statements as to the value, price and worth of said farm as meaning the market value.

Such evidence is sufficient to support the finding as to the representations of value, if such representations are in fact representations as to a fact and not the mere expression of an opinion. ■ The defendants herein urge that such representations were the mere expressions of an opinion and not the statement of a fact at all.

In *Alvárez* v. *Brannan,* 7 Cal. 503, at 507 [68 Am. Dec. 274], the court says:

"If a party asserts that *as true,* which he does not know to be true, it is a false representation. If he intends simply to state his belief upon information, then he should state it in that precise form, so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement *in the form* in which he makes it. If he states a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his own peril, and must make good his assertion."

This rule is cited with approval in *Giovannoni* v. *Bartmann,* 59 Cal. App., at page 651 [211 Pac. 844].

In *Crandall* v. *Parks,* 152 Cal. 772, 774 [93 Pac. 1018], the court was passing upon a case wherein the plaintiff was the owner of a certain land in San Diego County and the defendant was the owner of certain land in the state of Oregon. The plaintiff never saw the land in Oregon and had no knowledge of its value, nature or quality, except the statements of defendant in regard thereto. The defend-

ant knew this. An exchange of properties was effected, plaintiff being induced to consummate the same by reason of such representations as to value and ownership upon which he wholly relied. The court said on page 776:

"It is claimed that the representation as to the value of the Oregon land was nothing more than a mere expression of his own opinion as to the value on the part of the defendant, and therefore that an action will not lie on account thereof. This, however, is not the effect of a fair construction of the findings. A statement as to the value of property is not always made as a mere expression of opinion upon which the other party has no right to rely. It may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made. When it is such, it is like any other representation of fact, and may be a fraudulent misrepresentation warranting rescission. The rule in regard to this matter is stated by Mr. Pomeroy as follows: 'Wherever a party states a matter which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation.' (2 Pomeroy's Equity Jurisprudence, sec. 878.) He further says that the statements which most frequently come within this branch of the rule are those concerning value." (See, also, *Harris* v. *Miller*, 196 Cal. 8 [245 Pac. 981]; *Nichols* v. *Moore*, 181 Cal. 131 [183 Pac. 531]; *Bonnarjee* v. *Pike*, 43 Cal. App. 502 [185 Pac. 479]; *Phelps* v. *Grady*, 168 Cal. 73 [141 Pac. 926]; *McKeever* v. *Lock Paddon Co.*, 58 Cal. App. 51 [207 Pac. 1040]; and *Winkler* v. *Jerrue*, 20 Cal. App. 555 [129 Pac. 804].)

In *Stockton* v. *Hind*, 51 Cal. App. 131, at page 136 [196 Pac. 122, 124], the court says:

"It is conceded that the general rule is that an expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and although false, does not amount to actionable fraud. Ordinarily a person has no right to rely upon such statements, and if

he does so rely, he cannot treat them as fraudulent, either for the purpose of maintaining an action in damages for deceit or for the purpose of rescinding the contract. Where there is any doubt as to whether or not a representation was intended and understood as a mere expression of opinion or a statement of fact, the question is one not of law but of fact for the court or jury. (20 Cyc. 15 et seq.; *Spreckels* v. *Gorrill*, 152 Cal. 395 [92 Pac. 1011]; Am. & Eng. Ency. of Law, 36.)'' (See, also, *Herdan* v. *Hanson*, 182 Cal. 538 [189 Pac. 440]; *Dow* v. *Swain*, 125 Cal. 674 [58 Pac. 271]; *Mead* v. *Bunn*, 32 N. Y. 275; *Palladine* v. *Imperial Valley Farm Lands Assn.*, 65 Cal. App. 727 [225 Pac. 291]; *French* v. *Freeman*, 191 Cal. 579 [217 Pac. 515]; and *Ryder* v. *Bamberger*, 172 Cal. 791 [158 Pac. 753].)

Defendants rely upon the rule of independent investigation. Williams wrote on January 11, 1924:

''Security State Bank,

''McIntosh, S. Dak.

''Gentlemen: Mr. R. A. Myers of McIntosh, requested I write you in re values of following lands and improvements (describing the South Dakota lands here in question).

''I would like to ascertain the value you place upon these lands and amounts of loan that could be had upon each parcel approximately.

''The present market value is particularly desired as well as desirability of location. . . . Kindly let me have your candid opinion,'' etc.

In answer thereto he received a letter from R. H. Jackson, cashier, in part as follows:

''Yours of Jan. 11th received and note contents. Regarding the R. A. Myers farms as described in your letter will say that these farms are as good a quality as in the county and on good roads from two to four miles from town. Such farms with good improvements range from $50. to $140. according to distance from town and class of improvements the lands might contain. These farms have always rented and I believe they are rented now. Loans could be gotten, but it would take time to work them through, and of course, loaning agencies expect the land to be occupied by the owner, have 25% under cultivation and milk cows.''

Williams wired the Commercial Club of McIntosh on January 31, 1924, as follows: "With view locating there please wire collect present cash value R. A. Myers farm land."

Answer was sent from McIntosh February 1, 1924:

"Party owns considerable land. Not acquainted with particular quarters. Land in vicinity all values. Unimproved twenty to thirty-five. Well improved quarters seventy-five to one hundred fifty.

"(Signed) COMMERCIAL CLUB."

The record discloses the fact that there was no Commercial Club in McIntosh. There was a Booster Club which was not active, but the said R. H. Jackson had been active therein some time before. Somehow the telegram was delivered to R. H. Jackson and he answered the same signing it "Commercial Club," without disclosing his identity. It will be noted that the letter from the bank was prior to the letter sent by Mercedes C. Williams to Myers, but that the telegrams were subsequent in date to said letter. This constitutes, so far as the record discloses, all the investigation or inquiry made by the Williams concerning said property. Does such inquiry preclude plaintiffs from reliance upon the representation of a value alleged and found to be fraudulent? We think not. The rule is stated by Mr. Pomeroy in his work on Jurisprudence (3d edition, section 893) as follows:

"If after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, *has recourse to the proper means of obtaining information, and actually learns the real facts,* he cannot claim to have relied upon the misrepresentation and to have been misled by it. Such claim would simply be untrue. The same result must plainly follow when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences, or purports or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had be pursued the inquiry to the end with diligence and completeness. He

cannot claim that he did not learn the truth, and that he was misled." (Italics ours.)

In *Neher* v. *Hansen*, 12 Cal. App. 370, at pages 372, 373 [107 Pac. 565], the court says:

"No duty developed upon plaintiff to make any investigation as to the truth of the statements. As said in *Calmon* v. *Sarraille*, 142 Cal. 638 [76 Pac. 486]: 'Even when contracting parties are adverse to each other, either has the right to rely upon an express statement made by the other of an existing fact of which the truth is known to the other and unknown to him.' See, also, *Willey* v. *Clements*, 146 Cal. 91 [79 Pac. 850], and *Morris* v. *Courtney*, 120 Cal. 65 [52 Pac. 130], where it is said: 'And the seller cannot escape responsibility by showing that the purchaser might have ascertained that such representations were untrue. . . .

"Conceding that plaintiff may have consulted others or received information from others, it would not follow as a matter of law that such information was of a character to influence him in the purchase. Moreover, the giving of such an instruction would take from the jury the determination of the question as to whether or not plaintiff relied upon the representations made by defendant, and was thereby induced to buy the stock." (See, also, *Shermaster* v. *California Home Building Loan Co.*, 40 Cal. App. 661 [181 Pac. 409]; *Sullivan* v. *Helbing*, 66 Cal. App. 478 [226 Pac. 803]; *Troy Laundry Machinery Co.* v. *Drivers' etc. Co.*, 14 Cal. App. 152 [111 Pac. 121]; *Davis* v. *Butler*, 154 Cal. 623 [98 Pac. 1047]; and *Spreckels* v. *Gorrill*, 152 Cal. 383 [92 Pac. 1011].)

In *Blake* v. *Arp*, 180 Cal. 144, at page 147 [179 Pac. 683, 684], the court says:

"Appellant urges the fact that the evidence was insufficient to show any fraud on his part, for the reason, as he claims, that the plaintiff knew as much about the title as he did, and that therefore his statement was a mere expression of opinion, and cites in relation thereto the following cases: *Choate* v. *Hyde*, 129 Cal. 580 [62 Pac. 118, and *Rheingans* v. *Smith*, 161 Cal. 362, 365 [Ann. Cas. 1913B, 1140, 119 Pac. 494]. But the evidence does not support appellant's position. . . . Moreover, the evidence of plaintiff was that she was constantly lulled into inaction by the

repeated assertion of defendant that he had the title, notwithstanding the allegations of the plaintiff in said suit.''

In the case of *Del Vecchio* v. *Savelli*, 10 Cal. App. 79 [101 Pac. 32], the court holds that fraud is generally proved by inference from facts and circumstances and not by direct and positive proof. A single misstatement knowingly made with intent to influence another to enter into a contract will, if believed and relied upon by the other party, afford as complete a ground for relief as if it had been accompanied by a multitude of other false representations. (*Davis* v. *Butler*, 154 Cal. 623 [98 Pac. 1047].)

We are of the opinion that measured by the said rules the evidence is sufficient to sustain the finding that the representation as to value made by the defendants to the plaintiffs herein, are representations of fact and not mere expressions of opinion. Measured by the rule that the property is far removed from the residence of the plaintiffs and that the plaintiffs had no knowledge as to the same, we find that the property was halfway across the continent east and west and well toward the northern boundary of the United States, while the plaintiffs resided in Southern California. Measured by the surrounding circumstances we find expressions used by the defendants in their correspondence with the plaintiffs such as ''My land will stand up under any inspection'', ''an A-1 farm'', ''I am going to be frank and to the point'', ''wont trade for inflated value'', reference to the Security State Bank, realty firm in neighboring town, Abstract and Appraisal Co., ''now here is the point, I cannot trade these farms for inflated land in the Perris Valley as I can trade for almost anything up the valleys'', ''I will say that if your price is not inflated'', ''fine buildings'', ''grand place'', or words of such import, ''could have sold for much more'', ''Now Mr. Williams I am frank and want you to be for I have a-One farms here and will not trade them for something that is not worth the money'', ''really think you are telling the truth or wouldn't go to this bother'', ''let me hear soon'', ''wire me soon'', ''what I want is for you to *except* my offer'', ''please do something at once'' and ''all I can say yet is don't wire me until you are perfectly satisfied with my farms and my proposition. But must be done before the first of February as if I

don't deal with you I am taking a dairy farm just out of the city of Minneapolis and am only assuming $2,500.''

Myers knew how to state a limitation in the language used because whenever he referred to an offer to Williams for the California property he said "subject to inspection by self or party I send". If Myers had the slightest doubt as to what was being understood by the parties, which we question, then the letter of Mercedes C. Williams must have dispelled that doubt because she in unmistakable terms told him that any investigation Williams may have made had produced no results and they were relying upon his representations as to value as a fact; that they were financially unable to make the trip to examine his properties. This letter advised Myers that they were relying upon his representations and if they were not true the deal could not be closed as the Williams had their all in it. (*Blake* v. *Arp, supra; French* v. *Freeman, supra; Dow* v. *Swain, supra; Herdan* v. *Hanson, supra; Crandall* v. *Parks, supra.*) However, if there should be any possible question as to whether or not such a representation was a representation of an existing fact or not, then it was a question for the determination of the trial court. (*Herdan* v. *Hanson, supra; Stockton* v. *Hind, supra; Palladine* v. *Imperial Valley Farm Lands Assn., supra.*) The trial court has determined the same adversely to the defendants herein. Such determination is binding upon this court.

In the instant case plaintiffs only made a nominal inquiry along the line of reference suggested by the defendants to them, the Security State Bank. The information received therefrom appears to us so indefinite and conditioned that no one could be reasonably charged with having acted upon it, or to put it another way, such indefinite and conditioned information, if information it be, could not be said to preclude the presumption that plaintiffs relied upon the defendants' representation as to value. Neither could such information, if information it was, be said, as a matter of law, to wipe away the right to rely upon the representation of Myers as to value, to which he had pledged his faith (*Dow* v. *Swain*, p. 683, *supra*). The evidence is undisputed that the plaintiffs had never been in South Dakota and had no information concerning it.

The correspondence reveals the fact that Williams was not informed as to the true facts or any facts at all, and that Myers was continually reasserting the fact of value in his land directly or indirectly; that he, Myers, fails to comply with the rule that Williams must be given time to investigate, but rather urges plaintiffs to hurry, first by a courteous "please", then by a covert threat of loss and finally by the bald fixing of a date, February first, when the deal must be closed or he would trade his property for a dairy farm near the great city of Minneapolis. The constant affirmation of value in his lands in South Dakota, lulling the plaintiffs herein to trust and confidence in his representations of value, was of itself alone sufficient to keep alive the right of plaintiffs to rely upon said representations. (*Blake* v. *Arp, supra.*)

The lack of information received fails to overcome the presumption of reliance on the representations of defendants. (*Troy Laundry Machinery Co.* v. *Drivers' etc. Co., supra.*) The urge to haste contained in the evidence fails to comply with the rule of reasonable time to investigate. The telegram to a body nonexistent, answered as though by such body, by another, in its name, could not be said to be information from or for anyone, and could not constitute investigation. It at most was an inquiry directed to no one. Especially must this be true in the light of the letter of Mercedes C. Williams, positively declaring that they had been unable to get information upon which to act independently, and that they must and did rely upon the representations of the defendant Myers. ■ In order for an investigation to preclude a person's right to rely upon the representations made, it must be a free and untrammeled investigation. (12 C. J. 821.) We cannot say that such an inquiry precluded plaintiffs from relying upon such representation. On conflicting evidence the court found that such representation was false. It was material. ■ One false representation of a material fact is sufficient either for an action for rescission of a contract or to sustain an action for damages for fraud. (*Harris* v. *Miller*, 196 Cal. 8 [235 Pac. 981].) The fraudulent representation must be such that the court can say that without it the contract would not have been entered into. (*Craig* v. *Shea*, 45 Cal. App. 351 [188 Pac. 73], and cases there cited.)

In the instant case the representation of value was the very essence of the inducing cause of the contract. The other representations pleaded even were included in it and support it. We have no hesitation in saying that such representation of value was of such a character that without it the contract would not have been entered into. Defendants then urge that there is no evidence to support the finding that plaintiffs relied upon such representations. We think such claim is devoid of any merit. Fraud is generally proved by inference from facts and circumstances and not by direct and positive proof. (*Del Vecchio* v. *Savelli, supra.*) The evidence herein was sharply conflicting and the trial court found against the defendants. There is direct evidence which, together with the inferences from all the evidence, is abundantly sufficient to support such finding.

Plaintiffs allege among other things that said lands were represented as A–No. 1 farms, well improved, consisting of good soil, level and free from hard-pan, gumbo, adobe and stones and well adapted to the raising of the usual farm crops. The denial of the above allegations in the complaint is as follows: Deny that said tract of land consisted of soil which was largely composed of hard-pan, gumbo or adobe and which could not be cropped and cultivated with profit and success. Deny that more than 120 acres was worthless for cultivation or consisted of hard-pan, gumbo or adobe or was unfit for cultivation or was worthless for any purpose except pasture or would not in ordinary years grow good hay or grass thereon, or that said lands consisted chiefly of hard-pan, gumbo or adobe soil; deny that said soil thereon consisted largely of hard-pan, adobe or blowouts or buffalo wallows. The court found that as to certain of said lands the soil thereof on the south side was poor, contained gumbo, hard-pan and undersoil. As to certain other of said lands it was poor grazing land or gumbo rock land. The appellants urge as to these allegations that the trial court in fact deemed the allegation sufficiently traversed and such cause was tried upon such a theory; therefore the objection cannot be raised for the first time on appeal. In *Smithson* v. *Atchison*

*etc. Ry. Co.,* 174 Cal., at page 155 [162 Pac. 111, 114], the court said:

"It is a familiar principle that the case having been tried upon this theory without objection neither party will be allowed to present it in this court for the first time. (*Tulley* v. *Tranor,* 53 Cal. 274; *Horton* v. *Dominguez,* 68 Cal. 642 [10 Pac. 186]; *Illinois Trust & Sav. Bank* v. *Pacific Ry. Co.,* 115 Cal. 285, 297 [47 Pac. 60]; *Gervaise* v. *Brookins,* 156 Cal. 110 [103 Pac. 332].)"

And in the case of *Schuh* v. *R. H. Herron Co.,* 177 Cal. 13 [169 Pac. 682, 684], the following language is used:

"In this case, however, the defense of contributory negligence was considered as properly pleaded throughout the trial. No objection was made at any time on the ground that it was not pleaded. A large part of the testimony on the trial was devoted to that subject, and the instructions of the court show that it was deemed a matter in issue to be submitted to the jury. Under these circumstances a defective plea cannot be made available in support of an erroneous ruling on the subject. (Citing cases.)" (Also, 2 Cal. Jur. 246.)

■ The record discloses the fact that the trial of this cause occupied fourteen days; that the bill of exceptions contains only sixty-six pages; that the attention of the defendants, appellants herein, was directed to a claim of insufficiency of the record to fully present the issues on appeal. The defendants' record on appeal does not show any testimony offered or rejected or any action of the trial court relative thereto except a finding made. We must therefore assume that there was no proof as to such allegation. Was any such proof necessary? We think not. The reading of the allegation and the traverse thereof admits that the soil was hard-pan, gumbo and adobe and simply denies that the said soil was largely or chiefly of such a character. No person would even claim that if such a representation so made was false that such a condition of the soil would have to obtain to a large portion or the soil would have to be chiefly of such a character, to make such a representation a material one. ■ Furthermore, the complaint charges that the false representation was that the soil was free from hard-pan, gumbo, adobe and stones and hence if there

was any hard-pan, gumbo, adobe or stones on the said lands the truthfulness of such an allegation is admitted. While the court's finding is somewhat more limited than the allegation, no finding was necessary. (*Crandall* v. *Parks, supra.* See, also, *First Nat. Bank* v. *Maxwell,* 123 Cal. 360 [69 Am. St. Rep. 64, 55 Pac. 980].) Such admission comes in all its force as an ultimate fact to support the judgment to the same degree as though uncontradicted evidence supporting the allegation had been introduced and an appropriate finding thereon made. ■ That a representation as to land being free from hard-pan, gumbo or adobe being material, to the city bred and reared may seem questionable, but to him who has had the good fortune or ill fortune, if it be so, to have any knowledge concerning qualities of soil, the presence of hard-pan, gumbo or adobe has a distinctive significance such as to demonstrate beyond a peradventure of doubt, and almost to a mathematical certainty, the materiality of such a representation. To the farmer or one familiar with the presence of hard-pan, gumbo or adobe depreciates greatly, if it does not condemn, the land. The words themselves in connection with farm lands, declare a greatly lessened value if they do not destroy value. However, city reared and bred can find that such a representation is material. (See *Stone* v. *McCarthy,* 64 Cal. App. 158 [220 Pac. 690].)

■ Appellants next urge that there is no evidence to in anywise connect Mrs. Anna L. Myers, one of the defendants, appellants herein, with any of said representations. The defendants each chose to rely upon the answer filed in their behalf and hence cannot now claim there is or should have been a separate answer on behalf of each. However, they claim that the trial court tried the issue herein as though it had been properly traversed. The issue as to the question of value has been so considered by us because the trial court took evidence on the question and apparently so treated it. However, in the allegation here under discussion we find no evidence, whatever, either to sustain or to disprove the allegation of the presence on said premises of hard-pan, gumbo, adobe or stones. Therefore, we must assume that the trial court treated such allegation as an admitted fact not only as to the defendant Roscoe A.

Myers but also as to the defendant Anna L. Myers. Such admission itself is sufficient to bind her by the judgment. Had a separate answer been filed on her behalf denying that she had made any such representations as alleged, undoubtedly there would have been evidence offered on such an issue and the trial court would have made an appropriate finding relative thereto or in the absence of any evidence to establish such allegation the trial court would have found in her favor. In the present state of the record she is by admission bound by the judgment. ■ Appellants further urge that there is no evidence to sustain the finding that had the land been as represented it would have been worth $80,200. The complaint alleges "that had all the lands of said defendants hereinbefore described been as represented they would have been worth the sum of $80,200. That in the condition that they were they were not worth to exceed the sum of $6,500; that the plaintiff has been damaged thereby in the sum of $102,000, no part of which has been paid." The answer in traversing such allegation alleges as follows: "Deny that all of the lands of the defendant would have been worth, except in trade, the sum of $80,200 had they been as represented; deny that in the condition they were they were not worth to exceed the sum of $6,500; deny that the plaintiffs had been damaged in the sum of $102,000 or in any sum whatever." Such a denial raises no issue as to the alleged value of the said lands of the defendants if they had been as represented, to wit, the sum of $80,200. (*Marsters* v. *Lash*, 61 Cal. 622.) ■ On a conflict of evidence the court found that the property conveyed and transferred to the plaintiffs was worth the sum of $29,500. By the admission of the pleadings the value would have been $80,200 if the same had been as represented. Therefore, the plaintiffs were damaged in the sum of $50,700, or the difference between the actual value of the property and the value the property would have had, had it been as represented. The record is again silent as to any action of the trial court as to receiving or rejecting any evidence in this particular. Hence all of the intendments being in favor of the judgment, we must assume that the trial court received no evidence on the subject of the allegation and relied upon the admission

288

of the pleadings in arriving at its decision. The defendants failed to point out any different theory upon which the cause was tried.

Where appellants claim the benefit of the rule that even though the answer is insufficient to constitute a denial of the allegations of the complaint yet if the trial court proceeded to try the issue as though the allegations were sufficiently traversed without objection from either parties, on appeal, the allegations will be deemed to have been sufficiently traversed. The appellants must, by the record on appeal, show that the trial court placed such a construction on the pleadings and that such a construction was not objected to by the parties. In the absence of such a showing in the record, the rule is of no avail and the trial court will not be presumed to have placed such a construction on the issues raised by the pleadings unless it affirmatively so appears.

Other objections urged by the defendants are without merit in view of the holding of the principal questions here involved. For the foregoing reasons the judgment is affirmed.

Marks, Acting P. J., and Barnard, J., concurred.